IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID GUZMAN,

        Plaintiff/Counter-Defendant,

vs.                                                 No. CIV 99-626 LFG/KBM

CITY of ALBUQUERQUE,

        Defendant/Counter-Plaintiff.

and

SAL BARAGIOLA, Deputy Chief,
RUEBEN DAVALOS, Captain, and
PAUL CHAVEZ, in their individual capacities,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant/Counter-Plaintiff City of Albuquerque's ("the City") Motion for Summary Judgment [Doc. 25]. The City seeks a favorable ruling on its counterclaim against Plaintiff/Counter-Defendant David Guzman ("Guzman") and an award of compensatory damages in its favor. Guzman opposes the motion. In accord with the District's motion practice rule, the motion, response and reply were simultaneously filed on March 14, 2000. Oral argument is not necessary, and this matter will be resolved based on the parties' submissions. For reasons given below, the motion is granted in part and denied in part, and other relief is noted.

## Procedural History

Plaintiff Guzman filed his Complaint in this case on June 4, 1999 against "the City of Albuquerque, Albuquerque Police Department" [Doc. 1, ¶9] and three city employees in their individual capacities. Guzman, formerly a sergeant with the Albuquerque Police Department ("APD"), alleged in his complaint that the City violated Title VII of the Civil Rights Act of 1964 in that it removed him from his position with the Narcotics Interdiction Unit and transferred him to an entry level position with the West Side Narcotics Impact Team, in retaliation for: (1) Guzman's participation as lead plaintiff in a 1994 lawsuit (hereafter referred to as the "Alianza lawsuit") alleging racial discrimination and retaliation by APD in violation of Title VII; (2) his participation in the mediation process of Detective Oscar Medrano which arose from the Alianza lawsuit; (3) his filing a civil rights lawsuit in 1997 (hereafter referred to as the "1997 lawsuit")
against certain employees of APD and the City, alleging racial discrimination and refusal to promote Guzman in 1995 in retaliation for his activities on behalf of the Chicano Police Officers Association and Latino Police Officers Association; and (4) his speaking out on matters of public concern, including incidents of domestic violence, drug activity, police violence against informants, racially derogatory speech, and other alleged misconduct by members of the police force.

Guzman further alleged in his complaint that the three individuals, Deputy Chief Sal Baragiola, Captain Rueben Davalos, and Lieutenant Paul Chavez, were each personally involved in the decision to transfer him to the West Side Impact Team, and that they conspired to deter Guzman from exercising his First Amendment rights to speak out on matters of public concern and to engage in litigation activities, in violation of 42 U.S.C. §§ 1983 and 1985(2). Guzman requests declaratory relief; compensatory damages in the amount of $450,000 for emotional distress, humiliation, loss of

enjoyment of life, and damage to his career opportunities and reputation; and $1 million in punitive damages.[1]

The City filed a counterclaim seeking damages for Guzman's alleged malicious abuse of process in that he: (1) allegedly threatened to disclose scandalous information about City officials unless the City succumbed to his demand for damages; and (2) is attempting to bring the same claims against the City, and recover the same damages, which he previously sought and litigated in the 1997 lawsuit.

The City thereafter filed this Motion for Summary Judgment, arguing there is no genuine issue of material fact on its claim for malicious abuse of process and that, as a matter of law, the City is entitled to compensatory damages in the amount of its litigation expenses as well as punitive damages. The individual defendants have not joined in the City's motion and do not seek summary judgment on their own behalf. Guzman opposes the City's motion. He argues that the City's counterclaim itself represents a malicious abuse of process [Doc. 27, at 12-14], but he has not filed a motion for summary judgment in his favor on the City's counterclaim.

## **Summary Judgment Standard**

A summary judgment proceeding is appropriately used to cut through the allegations of the pleadings and to determine if there is a triable issue. Summary judgment will be granted when the moving party can demonstrate that there is no genuine issue as to any material fact and that the

---

[1] Although the Complaint is not clear on this point, Guzman states in his Memorandum in Opposition to the City's Motion for Summary Judgment that he is seeking punitive damages only against the individual defendants, not against the City. [Doc. 27, at 10]. Indeed, punitive damages against the City are not available in a Title VII lawsuit. A complaining party may recover punitive damages under 42 U.S.C. Section 1981a(b)(1) against a respondent, other than a government, government agency or political subdivision, if the complaining party demonstrates that the respondent engaged in a discriminatory practice with malice or with reckless indifference to federally protected rights.

3

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The court does not decide the issues of fact, but rather determines if there is an issue that must be resolved at trial.

Summary judgment is appropriate only if there is insufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Thus, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. The Court, in considering a motion for summary judgment, construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Curtis v. Oklahoma City Pub. Sch. Bd. of Educ., 147 F.3d 1200, 1214 (10th Cir. 1998).

## **Analysis**

A. Elements of the Cause of Action for Abuse of Process

The City claims in its motion that it made out all the elements of a claim for malicious abuse of process, and there remain no genuine issues of material fact for the jury to consider on this claim. Under New Mexico law, the tort of malicious abuse of process is "designed to offer redress to a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights." DeVaney v. Thiftway Mktg. Corp., 124 N.M. 512, 517, 953 P.2d 277, 282 (1997), *cert. denied*, 524 U.S. 915, 118 S. Ct. 2296 (1998). The cause of action consists of the following elements:

4

> (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. In short, there must be both a misuse of the power of the judiciary by a litigant and a malicious motive.

DeVaney, 124 N.M. at 518. The tort of malicious abuse of process is construed narrowly to protect the right of access to the courts. Id., at 519. The City's counterclaim does not clearly set forth the elements of this cause of action; however, when read in conjunction with the City's memorandum in support of its summary judgment motion, the Court is able to ascertain the basis of the City's claim.

As the requisite improper acts, the City cites three actions by Guzman. The first is a purported extortion attempt contained in a letter sent by Guzman's attorney to the City in July 1997, in which Guzman threatened to reveal scandalous information regarding public officials within the City of Albuquerque if his settlement demands were not met. The City asserts that Guzman never had any scandalous information to reveal, and Guzman admitted as much in a later deposition. The July 1997 letter was sent after breakdown of mediation negotiations between Guzman and the City arising from the Alianza lawsuit. The letter indicates that Guzman was, at the time of the letter, contemplating filing suit to press the claims which had run aground in mediation.

The second improper act alleged by the City is Guzman's filing of the 1997 lawsuit, after the settlement demand in Guzman's letter was not met (or after the City refused to succumb to his extortion attempt, depending upon one's point of view). The third improper act cited by the City is Guzman's filing of the present lawsuit in an attempt to recover damages and to re-activate claims which were already litigated in the 1997 lawsuit.

The City must also prove that Guzman's primary motive in doing these acts was to accomplish an illegitimate end. As evidence of an improper motive, the City cites the fact that Guzman filed the present action immediately after the City appealed the judgment in the 1997 lawsuit, and because the present lawsuit is allegedly based on the same constitutional violations and seeks identical damages as the 1997 lawsuit.

The City claims that it has been damaged in an amount equal to the cost of defending this lawsuit and bringing the counterclaim. It seeks compensatory damages in that amount, as well as punitive damages.

    B. <u>The City Has Failed to Establish Improper Acts or a Malicious Motive</u>

        1. <u>Alleged Improper Acts</u>

The improper act which gives rise to an action for malicious abuse of process must be something more than filing the complaint. It may occur either before or after the complaint is filed, but must be something which is "irregular or improper in the normal course of proceedings." <u>DeVaney</u>, 124 N.M. at 520.

The City cites, as one improper act, the filing of the 1997 lawsuit. This does not meet the <u>DeVaney</u> requirement for an act "other than such as would be proper in the regular prosecution of the claim." It is true that the Court rejected, as unsubstantiated, Guzman's claims for racial and ethnic discrimination in the City promotion practices, together with his claim that he was not promoted in retaliation for his advocacy and support of Hispanic causes and union activity. The 1997 lawsuit resulted in dismissal of Guzman's claims against the police defendants based on the discrimination issues. However, he was awarded $75,000 as compensatory damages for retaliation in the form of failure to mediate in good faith Guzman's claims in the Alianza lawsuit. The fact that

6

Guzman was awarded "some form of recovery" in the 1997 lawsuit is conclusive evidence of probable cause for bringing the 1997 suit. DeVaney, 124 N.M. at 521. The filing of the 1997 lawsuit was not, as a matter of law, an act "other than such as would be proper in the regular prosecution of the claim."

The City also relies on the July 10, 1997 letter sent by Guzman's counsel to the City's Risk Management Division a few months before filing the 1997 lawsuit, as an overt, improper act supporting its claim of malicious abuse of process. The City argues that this letter constitutes an extortion attempt by Guzman, in that he allegedly threatens to reveal unfavorable information about public officials if his settlement demand is not met.

The letter informs the City that Guzman retained counsel to represent him in an effort to resolve claims of racial discrimination and retaliation, claims which were left hanging after the unsuccessful attempt at mediation. The letter reads:

> To avoid litigation and further retaliation and stress related to his claims, Officer Guzman is willing to retire from the Department. In return for his agreement to retire at a date certain, the City must pay the compensatory damages sum of $175,000.00. Officer Guzman's retirement date would be the date the settlement draft is delivered. Officer Guzman would be willing to enter into an agreement to keep certain information he possess confidential. Officer Guzman will press his claims if this matter is not settled by August 6, 1997. These claims will show the manipulation of the promotion process by the Department as well as expose the Administration to some unwanted publicity.

Exhibit A to the City's Brief in Support of Motion for Summary Judgment [Doc. 26].

This letter constitutes an attempt to settle Guzman's claims for discrimination and retaliation by failure to promote. Guzman previously participated as a plaintiff in the Alianza litigation which terminated in unsuccessful mediation. It was not improper for him, following the breakdown of

7

mediation, to continue to pursue a possible settlement of claims raised in that suit. Once his settlement demand was rejected, it was not improper for him to file the 1997 lawsuit in order to attempt a judicial resolution of those claims. The letter does not constitute an empty threat to sue, designed to "extort" money from the City; rather, it represents a settlement demand which is "proper in the regular prosecution of a claim." *See*, DeVaney, 124 N.M. at 519. The 1997 lawsuit itself was based on at least one legitimate claim, failure to mediate in good faith, as is evidenced by the result.

Action taken to effect a settlement of claims which would otherwise be litigated "is includable in the goals of proper process." Bickel v. Mackie, 447 F. Supp. 1376, 1383 (N.D. Iowa 1978), *aff'd* 590 F.2d 341 (8th Cir. 1978). In Clark v. Steinberg, No. Civ.A. 87-1945, 1988 WL 110004, at *2 (W.D. Pa. June 1, 1988), the court held that language in a letter from counsel recommending settlement, "[i]f you wish to avoid the expense and notoriety of litigation," did not constitute an extortionate demand giving rising to a cause of action for abuse of process:

> Abuse of process may involve an attempt to effect an extortionate demand or to cause a surrender of a legal right . . . In the present case, Clark has filed suit against Steinberg for a related claim to collect [damages] . . . This Court cannot say that Miller's letter suggesting settlement forms a sufficient basis for a claim of extortion . . This letter merely recognizes that settlement may be an efficient and preferable alternative to trial under the circumstances, one which Steinberg may freely accept or reject. Steinberg has not shown that Miller has perverted civil process or used it in any way for which it was not legally intended . . ..

While the Court may properly question Guzman's statement through counsel that "Officer Guzman would be willing to enter into an agreement to keep certain information he possesses confidential," this statement does not go beyond the usual give and take of the litigation process. When taken together with other statements in the letter to the effect that an airing of Guzman's claims

in court "will show the manipulation of the promotion process by the Department as well as expose the Administration to some unwanted publicity," the Court cannot say that the letter represents anything more than an advocate's attempt to persuade an opponent to settle. It is nearly always true that the airing of disputes in court exposes one or both parties to unwelcome publicity.

As was true in Clark, *supra*, Guzman's letter merely recognizes that settlement may be an efficient and preferable alternative to trial under the circumstances, one which the City was free to accept or reject. "There is no abuse of process where [action taken in connection with litigation] is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." Farmers Gin Co. v Ward, 73 N.M. 405, 407, 389 P.2d 9, 11 (1964).

The City's third example of an improper act constituting abuse of process is Guzman's alleged attempt to bring claims in the present lawsuit which have already been litigated. At first blush, there appears to be legitimacy in the City's concerns. Much of the background information in the present complaint refers to and touches on claims and grievances that were litigated before Judge Vazquez and rejected. It is easy to see why the City believed that the present lawsuit was an improper attempt to revive claims that have already been litigated. However, a close reading of the complaint shows that the present lawsuit is not an attempt to present Guzman's discriminatory treatment allegedly directed against Hispanics and, in particular, against him. The claims which Guzman asserts in this case are not the same as those litigated in the 1997 lawsuit (or in the Alianza litigation, which gave rise to the 1997 suit).

Guzman's 1997 lawsuit was based on racial discrimination in the City's promotion practices, retaliation against Guzman by failing to promote him in 1995 as reprisal for his police union activity and outspoken advocacy of Hispanic causes, and a due process claim relating to the promotion

9

process. Although the City participated in the 1997 lawsuit to the extent of filing briefs, it was not named as a plaintiff in that case, and, in a stipulation, Guzman clarified that he did not allege any cause of action against the City. [Doc. 25, Civ. No. 97-1279].

In the present lawsuit, Guzman names the City as the defendant in his Title VII claim, and he also names three individual defendants. Only one of these current defendants, Sal Baragiola, was named in the 1997 lawsuit, and he was dismissed prior to trial on stipulation of the plaintiff. [Docs. 25, 26, Civ. No. 97-1279]. The present lawsuit is based on an allegation that, in 1998, Guzman was transferred to a less responsible and less prestigious position in APD in an attempt to force him into retirement in retaliation for his litigation activities and other exercise of his First Amendment rights. The claim based on the 1998 transfer was not raised or litigated in the 1997 lawsuit.

With the confusion concerning whether the present suit is an attempt to resurrect previously rejected claims, the Court understands the City's approach in bringing a counterclaim against Guzman for malicious abuse of process. The objections, however, should have more appropriately been raised by arguing preclusion under the doctrine of collateral estoppel or res judicata. It is clear that a litigant who has been afforded a full and fair opportunity to litigate an issue will be collaterally estopped from re-litigating the same issue in a new lawsuit. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 328-30, 99 S. Ct. 645, 650-51 (1979). However, as noted above Guzman's claim in the present case alleges a new act of retaliation, the 1998 transfer, which was not resolved or even raised in the 1997 litigation.

Res judicata is an affirmative defense, with the burden of proof on the defendant. Parkins v. Patterson, ___ F.3d ___, 2000 WL 639704 (10th Cir. May 18, 2000). Under the res judicata doctrine, a final judgment on the merits of an action precludes the parties from re-litigating issues that

were or could have been raised in the prior action. Id. Although a party may not avoid the preclusive effect of res judicata or collateral estoppel by simply naming a different defendant while bringing the same claim, Parklane Hosiery, 439 U.S. at 328, nor by bringing the same claim under a different legal theory, Clark v. Haas Group, Inc., 953 F.2d 1235 (10th Cir. 1992), Guzman does neither of these things. The issue Guzman raises against the City in the present case is whether the City violated Title VII in transferring him to an entry level sergeant's position as a retaliatory measure. This issue was not raised in the 1997 lawsuit; indeed, the transfer had not occurred at the time Guzman filed his complaint and did not take place until that case was well underway.

The cause of action based on retaliatory transfer could conceivably have been raised in the 1997 lawsuit, since Guzman was notified of the transfer on July 8, 1998, and the bench trial took place on October 13-15, 1998. However, Guzman cites a number of reasons, which the Court finds persuasive, explaining why he did not raise the transfer-as-retaliation issue in that case. These reasons include the fact that the forced transfer had not occurred when his filed the 1997 lawsuit, the fact that the cutoff date for amending the pleadings had already expired and the final pretrial order had been entered by the time he was notified of the transfer, and the fact that the EEOC had not issued a right-to-sue letter on the transfer-as-retaliation claim, until after final judgment was entered in the 1997 lawsuit.[2]

The Tenth Circuit follows the transactional approach of the Restatement (Second) of Judgments in determining whether two causes of action are identical for purposes of res judicata,

---

[2]Although it has been held that the fact that a claimant is awaiting a right-to-sue letter does not absolve him from the preclusive effects of res judicata, Woods v. Dunlop Tire Corp., 972 F.2d 36, 40 (2d Cir. 1992); *but see*, Ludwig v. Quebecor Dailies, Inc., 483 F. Supp. 594, 596 (E.D.Pa. 1980), the Court does not rely exclusively on this factor but finds it relevant and helpful, along with other factors, in explaining why Guzman did not include the transfer claim in the 1997 lawsuit.

Yapp v. Excel Corp., 186 F.3d 1222, 1226 (10th Cir. 1999), and the Circuit has held that where two claims based on upon a single "transaction" – that is, the employment relationship – res judicata will preclude the second claim. Clark, at 1239. However, the Clark holding was distinguished in an opinion by a District Court in this circuit, which this Court finds persuasive. In Johnson v. Board of County Commissioners, No. 99-2289, 1999 WL 1423072 (D. Kan. Dec. 9, 1999), the court found Clark inapplicable because the retaliatory conduct giving rise to the second lawsuit occurred after the first complaint was filed; the same is true in the present case. The Johnson court disagreed with the defendant, who argued that the plaintiff should have amended his first complaint to include allegations arising from the later conduct, which occurred several months after the complaint was filed. The court noted that the plaintiff was under no obligation to expand his suit to add a claim which could not have been asserted at the time suit was commenced, and it concluded:

> Although the court has not uncovered a Tenth Circuit decision addressing the precise issue presented here, the court is persuaded by the rule articulated in those decisions that have addressed the issue. Moreover, defendant has directed the court to no authority suggesting that the rule should be otherwise. Thus, because plaintiff was under no obligation to supplement his pleadings in Johnson I to include claims based on conduct that occurred after he filed his complaint, the court concludes that res judicata does not bar plaintiff from litigating those claims in the present suit . . . The court's conclusion also avoids the potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the pending litigation or lost.

Johnson, *supra*, at *4 & n.4.

Thus, Guzman is not attempting to assert any claims or causes of action in this lawsuit which are precluded by collateral estoppel or res judicata. To the extent his complaint could conceivably be construed to re-raise such claims, any such attempt will not be permitted. The Court will not allow

12

Guzman to present evidence at trial of this case that would have the effect of re-litigating any claims raised and decided in the 1997 litigation, including claims resolved in Judge Vazquez' Findings of Fact and Conclusions of Law, filed January 29, 1999 [Doc. 68, Civ. No. 97-1279], based on racial or national origin discrimination in promotion, due process violations in the promotion process, or pre-transfer retaliation for Guzman's speaking out as a union representative against racial discrimination in the police force. Guzman relies solely on the 1998 transfer for his causes of action in the present case, against both the City and the individual defendants. [Doc. 27, at 9, 11, 12]. Any damages which Guzman may recover, should a jury find merit in his claim, will be limited to damages arising from the 1998 transfer.

2. Alleged Improper Motive.

The City failed to show that Guzman engaged in improper acts in the course of pursuing this claim, and therefore the element of improper motive need not be reached. The Court does note, however, that the City did not meet its burden of showing that Guzman's primary motive in bringing this action was to misuse the litigative process in order to accomplish an illegitimate end. DeVaney, 124 N.M. at 518.

The City cites as evidence of Guzman's improper motive the fact that he filed this action shortly after City-official defendants in the 1997 lawsuit filed an appeal in that case. The City seems to argue that the timing indicates that Guzman filed the present suit to punish the City or to coerce it into dropping the appeal, or both. Guzman responds that the date of filing this lawsuit was dictated by the timing of his receipt of the right-to-sue letter from the EEOC. The Court does not find it necessary to resolve this dispute but finds rather that Guzman's position is reasonable, and the City's speculative assertion fails to establish that Guzman's primary motive was to misuse the process for

illegitimate ends.

Furthermore, the Court does not assign any particular weight to the fact that Guzman seeks the same amount of damages in this action as he did in the 1997 litigation; if the City is found liable, the jury will determine damages based on the evidence presented at trial, and not on the amount listed in the *ad damnum* clause. Finally, the City claims that the identity of issues in the 1997 lawsuit and the present case implies an improper motive. The Court rejects this argument, having already found that the issues in the present case are not the same as those raised in the 1997 litigation.

### **Summary Judgment is Appropriate on The City's Counterclaim**

The City failed to meet its burden of making a *prima facie* showing of its right to prevail, as a matter of law, on its claim of malicious abuse of process. Although Guzman has not filed a cross-motion on this issue, the Court concludes that the counterclaim should be dismissed and summary judgment entered in favor of Guzman on the issue of malicious abuse of process.

Under Rule 56, Fed. R. Civ. P., the court can grant summary judgment when it affirmatively appears from the pleadings, depositions and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment in his favor as a matter of law. Wilder v. Prokop, 846 F.2d 613, 625 (10th Cir. 1988). Summary judgment may be rendered in favor of the party opposing summary judgment even though he has made no formal cross-motion under Rule 56, so long as the parties have had an opportunity to present all applicable facts concerning their respective positions. Dickeson v. Quarberg, 844 F.2d 1435, 1444 n.8 (10th Cir. 1988).

The City having failed to raise an issue of fact as to whether Guzman's actions constituted malicious abuse of process, the Court finds it appropriate to enter summary judgment in favor of

14

Guzman on the City's counterclaim and thereby streamline and narrow the issues that will be tried. Guzman's claim that his 1998 transfer constituted retaliation in violation of his statutory and constitutional rights will proceed to trial.

IT IS THEREFORE ORDERED that Defendant City of Albuquerque's Motion for Summary Judgment [Doc. 25] is DENIED in part, to the extent the City seeks damages against Plaintiff for malicious abuse of process;

IT IS FURTHER ORDERED that the City's Motion for Summary Judgment is GRANTED in part, in the sense that Plaintiff may not revisit any issues already decided in previous litigation;

IT IS FURTHER ORDERED that summary judgment is granted in favor of Plaintiff David Guzman on the City of Albuquerque's Counterclaim [Doc. 7], and the counterclaim is hereby dismissed.

                                                            */s/ Lorenzo F. Garcia*
                                                            Lorenzo F. Garcia
                                                            United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Donna L. Dagnall, Esq.

ATTORNEYS FOR DEFENDANTS:
Patricia G. Wlllliams, Esq.
William D. Slease, Esq.
Jonlyn M. Martinez, Esq.